May it please the Court. My name is Carol Ilusky, and I represent the appellant in this case, Aaron Brown. Good morning. This case involves an application of the ACCA, and as it's well established, any time the government seeks to impose this statute, it must prove by clear and convincing evidence that the prior crimes qualify as predicate offenses. The reason for that is clear in this case because of the extent of the sentence enhancement. Without the ACCA, Mr. Brown would have received – he was facing a 92-month guideline sentence. Both parties had agreed that they would recommend the bottom end of the guidelines. With the ACCA, he received 150 months. So it enhanced his sentence by more than a third of his total sentence, nearly five years. And despite this great effect on his sentence, the government would like this Court to prove the prior convictions through what may or may not have been the actual charging document to which Mr. Brown pleaded guilty. There's evidence in the record that there was an amended information, yet the government could only produce the original information. Given the conflicting evidence before the Court, it's impossible to say with the required certainty that this information can be relied upon. The evidence about it being a – about it being a defendant on plea of guilty where twice it is handwritten that there was an amended information. What difference does it make if we rely on the first information and the colloquy? We need – we need – if we don't rely on the first information? I says we do. Because we don't know what's in the second information. Because – First – first information. Because if he didn't plead guilty to that, we don't know what he pleaded guilty to. We don't have the language that – used in the information. We only have the language used in the information. What's – what's the information in the record and where do I find it that says that he pled to the second information if there actually was one? There's not – it's not that clear, Your Honor. It may, in fact, be that he pleaded guilty to the information that we have. So what do we do? We just throw the case out entirely because we can't ever get to the resolution of this? Well, it is one of the – one of the problems with these cases is that the government has required to meet a very high burden. It must be clear and unequivocal. And this was addressed in the Shepard case where the government wanted to pull in other kinds of information because it said, you know, we have to rely on the recordkeeping of these State courts. It might not be very good if we could pull in this other information, then we wouldn't always be bound by that. But the Court said no. Taylor requires certainty. When you're using the modified categorical approach, you need to apply certainty. Could we look at some of the specific issues and then see what kind of certainty there is or isn't? Yes. Because I agree the amended information, which does come up, I believe, in the colloquy and the plea agreement, but we don't have it to look at. But what about, let's say, the store, by way of example? We know that it was a location. We know from the record that it's a location that has windows and it has an address and two people went in it. So why wouldn't that information permit us to say that under Taylor it's the type of building that's within generic burglary? All we know is that it has a store and windows and people went into it. And an alarm. Two people. Two people went into it. So it's larger than a shoebox. But it could have been a booth. It could have been a stall. It could have been a van that was converted to sell products. Was a burglar alarm in it? Cars have burglar alarms. Those wires that you cut? I mean, at a certain point, are we required to spin out every, and I'm not suggesting you're trying to be absurd, but every possibility that would, in fact, be absurd that it could be? No, Your Honor. You're right. So, I mean, I'm just trying to think. I mean, it seems so obvious that, at least in that case, you have all the indicia of some kind of, all the indicia of a store. Now, it could, maybe it could be something else, but isn't it pretty clear and convincing that at least it is a store in that case? I'm just trying to understand why it wouldn't be. Well, I think that it's clear that it was a store, but that a store can be used in a and a door. So, yes, it was a store, and it says that in the plea colloquy, but whether the store is, you know, broad enough to encompass other definitions beyond the generic burglary. But he says, so we went there, he clipped the wires with mark and everything, he busted the window, and we went in and burglarized it. Yes, Your Honor. It could have been a van. It could have been a truck that they did that to. They could have busted the wires, broken. With a street address? Well, the street. Trucks don't have street addresses. Carts don't have street addresses. Well, we can't make the conclusion that anything with a street address is going to be a generic burglary. True, but if you have a street, it's an indicia along with other things. So, in other words, a car doesn't have a street address. A van doesn't have a street address. No, but a stall in a farmer's market might have a street address. Or a van well-established in a parking lot. It's been there 20 years because it's selling items or it's there for the snacks for the people who work in the buildings nearby. It's not an easy argument, but I think the court has to look at what the government has provided very carefully and with great rigor, given what's at stake here. And I'd like to just take a minute to distinguish this case from Stevens and Kilgore and Bonnet. In Stevens, this court found that the defendant had committed generic burglaries when the charging document used the terms building and dwelling without qualifying what those were and provided street addresses. The court held that the use of this language without qualification made it clear that building and dwelling were used in their usual sense and not their statutory sense, which was much broader. And similar conclusions were reached in Kilgore and Bonnet, where in Kilgore, the term used was building and jewelry store, and in Bonnet, it was a residence. But here, what we have, we have the information, and this is if the court chooses to rely on the information, we have the information not using the terms in the colloquial sense, but tracking the language of the statute. As opposed to what happened in those cases where they just used the word building, here we have the information directly tracking the statutory language, which this Court held in Wenner is insufficient because it's too broad. The Washington second-degree burglary statute uses the language, enters or remains unlawfully in a building other than a vehicle or dwelling. And for both second-degree felonies in this case, the charging information provided by the government said that Mr. Brown did feloniously enter or remain in a dwelling or vehicle. So because it directly tracks the statutory language, this case is different from Stevens and Kilgore and Bonnet and should be distinguished. And if there are no more questions, I'll save my time for rebuttal. All right. May it please the Court. My name is Andrew Friedman, and I represent the United States in this case. What's the story on this first and second indictment? Your Honor, I think the we did extensive research, and all of that is reflected in the record. I think the record establishes that there was an original information filed in the Cowlitz County case. There are two handwritten references to an amended information in a document called the Statement of Defendant on Plea of Guilty that do say amended information but I don't believe there ever was an amended information. We included in the record an affidavit from the county prosecutor who had looked and said that there's no record in the court docket that there ever was an amended information. There's no record in the minutes of the plea of guilty that there was such a document. But it appears that the judge, I think, made reference to it, and the plea agreement makes reference to it. So you're kind of in this, like, situation where they're kind of canceling each other out. Wouldn't you have to agree that we just don't know? The fact that there are two references to it raises a little bit of uncertainty. The reference in the plea colloquy, I think, actually supports the idea that there never was one, because the judge starts to talk about an amended information, and the defense lawyer says the government dismissed count four. So basically seems to be, doesn't seem to be buying onto the idea that there's an amended information. He's suggesting there was a count four, which was count four of the original information. Possession of stolen property, the government had dismissed that. I should say the State. But that being the case, there was no need for an amended information. And if you look at the judgment in the case, the judgment in the case clearly indicates that Mr. Brown was convicted or pled guilty to three counts of burglary, one on December 8th, one on December 9th, one on December 10th. They track exactly the dates of the three burglaries charged in the original information. And so I think the record suggests the absence of any such document in the court file, in the prosecutor's file, the absence of any reference to it except a couple of handwritten references and an oral reference that seems to be corrected, suggests there was no such document. What if we were to determine that because of the burden required here and given the incredible impact on the sentence, that it's a wash on the information and you can't go that route? In this case, I think there are two adequate bases for the Court to find that each of these crimes was a crime of violence. One is the information. But if the Court sets that aside, as you're suggesting, the plea colloquy clearly has sufficient facts, the plea colloquy combined with the judgment, for the Court to conclude that each of the three burglaries was a violent felony. And so I think the Court So his colloquy is enough admission of the facts we can use those to determine under Taylor whether they were crimes of violence? Yes, Your Honor. And Eric Berkley? Certainly combined. Without any reference to any information? I think that's entirely correct. The Court can say we choose not to reach the question of whether there was, in fact, an amended information. But what level of certainty do we need if we're going the second route? That is, there are substantial reasons to believe, based on this plea colloquy, that these qualify as generic burglaries. Yet, as your adversary has pointed out, with the exercise of, you know, some ingenuity, we might be able to say, you know, there's at least a bare possibility of that. How certain must we be? I think, Your Honor, the government has the burden of establishing that these are violent felonies. I think the letter that the defense has sent in saying that we have the burden of establishing by clear and convincing evidence, we'd accept it at that level. It's clear and convincing evidence is the standard, not beyond a reasonable doubt? I believe that's correct, Your Honor. And so we would accept that. And I think the record clearly establishes that in this case. We cited the Reyna Rodriguez case in our brief, saying that the Court should exercise common sense in applying the modified categorical approach. And when you look at the plea colloquy, the facts there clearly, if you apply common sense to those, the facts clearly establish that these are buildings. It would take a remarkable stretch. We just heard about sort of carts and farm markets and vehicles and the idea that they might have alarms that you could clip and that several people could go in. It's still defying common sense. For instance, the item stolen in the third case was beer. I'm not aware of any cart in a farm market that is going to be selling beer. I think if you look at liquor licensing laws, they're fairly tough. I think it's exceedingly unlikely that anything other than a building that is closely regulated is going to be a source of alcohol. And so when you look at each of the facts that are laid out for the first one, there's no evidence. I would go down that route because you can go to all kind of street fairs and buy beer from the Kiwanis cart and the Polish sausage cart. Those aren't carts that have been there for 20 years with street addresses. No, but I'm just saying, so I wouldn't say that you can't buy beer in a farm market. So I don't know that the beer is indicia that it's a store. That's what I'm suggesting. I think it's one thing that points in that direction. But if you look just at the plea colloquy and the statement of defendant on plea of guilty, for the first burglary, we have a reference to it as the pro shop. We have the fact that the defendant broke windows and that they then knocked items out of window displays. For the second burglary, we have references to the location burglarized as an apartment that was people's home. And it was an upstairs? Yes, Your Honor. They went downstairs, so it's a two-story structure. Correct, Your Honor. It contains stereo equipment, and the defendants went in through a window. And then for the third one, we have the fact that this is a store that sells beer. It has an alarm system. It has wires to the alarm system that you can clip to get in. Again, it's got windows because the defendants broke the windows. It's large enough that two people went in. I'm not applying common sense to each of those descriptions, even if the Court is to set aside the information. As I understand it, we only need two of those three. That's also correct, Your Honor. And if you – the residence being two stories, apartment, broken windows, if we put that one aside and say, well, that looks pretty good, the difference between a pro shop and the difference between a store with alarm and wires and selling beer. What's the – is there any significance in the fact that it's described by him as a store where the other one he said he went in and it was a business burglary? Business could be in anything. What's the significance of a store selling beer? I guess applying common sense, I would say that indicates even more clearly it is our idea of a building. Is that our standard, applying common sense? It is under Reyna Rodriguez, Your Honor. I think those are all factors that you look at and say, this was a building. It had four walls and a roof. And looking at those factors, I think the Court can and should conclude that each of the three meets the standard. Well, applying common sense, would you burglarize a lean-to without walls? I guess you could. Theoretically, you could. I mean, a person could, but I don't think you would be likely to end up with a description that it had windows, it had an alarm system, it sold beer, it was a store, two people fit into it, all of those items. But theoretically, one could, if the Court has no other questions. Thank you. So each of them, as I understand it, each of the three locations had a definite street address. It did. And actually, Your Honor, I should have, in response to your last question, you said you asked what the significance of some of these points like the street address was. Even if the Court is setting aside the information, I think the Court can and should look to the law of Stevens and Kilgore, which say that the fact that something is described as a building with a street address is enough to establish that it is a building under Taylor. Now, the fact that those items come from a plea colloquy and statement of plea, a defendant of guilty, plea of guilty, doesn't affect the basic principle. If the Court finds those elements, these are buildings, that these are generic buildings. This is not necessarily relevant to this case, but we see this kind of case from time to time where we've got a street address and so on. Does your office or do other offices, do you know? You go down to the recorder's office and you can figure out, okay, what's at that address? You could go to the address. You could take a picture. I mean, do you ever do that? Your Honor, we can't because that would basically take us outside of Taylor. We're basically not supposed to have many trials on the underlying facts. So you can't even have judicial notice of what's in the recorder's office? I guess I think we would receive sort of a strong negative response from the Court if we did try to do that. You think that might be the case. I'm not trying to lead you into error. No, no. I'm just kind of trying to explore this. You know, okay, there are various ways to figure these things out. We work closely with local law enforcement in deciding which cases to take. So, for instance, there was someone from the Longview Police Department who was closely involved in this investigation. I know from other cases I've done, I recognize these street addresses. I know what these buildings are. The officers know a lot more than I do, but I don't think we can really submit that evidence. While we're here, just a little bit of more careful information, and the information would probably clear that up. A store, not a mobile home, not a car with four walls. We've reached out. This is a state court prosecution that you didn't have any control over what happened in Cowles County or wherever it was. Is that true? These are Cowles County prosecutions. For their own purposes, not for yours. Right. We would like and have encouraged the – I see my time is up. May I finish that response? We would like and have encouraged local prosecutors – I mean, ideally, they would put statements into their plea agreements, burglarize the building that falls within the definition of a building or structure under Taylor. Dream on. Let's keep talking. All right. We have some rebuttal time. Just briefly, Your Honors. Without the charging document, we don't have a street address for the pro shop. We don't even have that it's a building. All we have that it was a business burglary. There was a window and a window display. Also, without the charging document, we don't have a building for the store. We just have a store with the window and the alarms and two people going into it. And I'd like to just briefly address the common-sense approach from Reyna Rodriguez. And that case did not derogate from the State's burden of clear and unequivocal proof of these things. And to the extent that the government would like it to derogate or suggest that its common sense is less, somehow, than clear and unequivocal evidence, I would ask this Court not to follow that. Reyna Rodriguez got its common-sense rule from a case that didn't have anything to do with sentence enhancements or the ACCA or the guidelines, but from a case where the defendant just had a straight-on challenge to the vagueness and overbreath of the indictment filed in the Federal case. So we can't use that case to derogate from what is the rule in ACCA context. Thank you. Thank you. Thank both counsel for your arguments. The case of United States v. Brown is submitted. We'll next hear argument in United States v. Brown.
judges: Brunetti, McKeown, W. Fletcher